UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DASHON SMITH, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:15-cv-02047-JMS-MPB ) |
| IU HEALTH, | ) ) |
| Defendant. | ) |

## ORDER

*Pro se* Plaintiff Dashon Smith worked for many years as a laboratory technician with Defendant IU Health, until her employment was terminated in November 2014. This case arises from that termination, which Ms. Smith alleges occurred in violation of 42 U.S.C. § 2000e-3(a) ("Title VII"). IU Health has moved for summary judgment on Ms. Smith's claims, arguing that she has failed to allege any race-based motive for her termination. For the reasons that follow, the Court grants IU Health's Motion.

## I.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

1

Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to

the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The following statement of facts was evaluated pursuant to the standards set forth above, that is, they are either undisputed or presented in the light most favorable to Ms. Smith.

Ms. Smith is an African-American woman. [Filing No. 23-2 at 30.] Ms. Smith began working for IU Health as a laboratory assistant in May 2001. [Filing No. 23-1 at 5.] She was promoted to senior laboratory assistant and then to clinical laboratory technician in 2011 in IU Health's pathology laboratory. [Filing No. 23-1 at 5.] Ms. Smith worked the night shift, and she reported to Coordinator for Specimen Processing Lichelle Boyd-Peppler, who worked the day shift. [Filing No. 23-1 at 6.] Margaret Gilbert was the Team Lead for the night shift clinical laboratory technicians. [Filing No. 23-1 at 6.]

Around July 2013, Ms. Boyd-Peppler complained to Ms. Smith regarding an issue that Ms. Boyd-Peppler was having with another employee, Tracy Frost. [Filing No. 23-1 at 11.] During that conversation, Ms. Boyd-Peppler stated that she wanted to "slap" Ms. Frost. [Filing No. 23-1 at 11.] Another employee, Jayme Jones, overheard that comment. [Filing No. 23-1 at 11.] Shortly thereafter, Ms. Jones spoke to Jim McGown, Director of Laboratory Outreach of the pathology laboratory, about Ms. Boyd-Peppler's comment. [Filing No. 23-1 at 14.] Mr. McGown then approached Ms. Smith to discuss the comment. [Filing No. 23-1 at 14.] Ms. Smith informed Mr. McGown that she heard Ms. Boyd-Peppler make the comment, and that while Ms. Smith was not

3

offended by it, she understood that Ms. Jones might have been bothered.[1] Ms. Smith does not recall whether anyone discussed any issues regarding race during that meeting. [Filing No. 23-1 at 15.]

Ms. Smith does not know whether Mr. McGown told Ms. Boyd-Peppler about either their meeting or about what Ms. Smith said, but she testified that after the meeting with Mr. McGown, Ms. Boyd-Peppler became "cold" toward her. [Filing No. 23-1 at 15.] Ms. Smith testified that Ms. Boyd-Peppler would no longer engage in casual conversation with her on the few occasions that their work schedules overlapped. [Filing No. 23-1 at 11.] Ms. Smith also testified that Ms. Boyd-Peppler behaved unprofessionally by bringing personal issues into work, [Filing No. 23-1 at 11], and by demonstrating favoritism toward certain employees, [Filing No. 23-1 at 13].

On October 1, 2014, Ms. Smith and Ms. Gilbert became involved in a dispute regarding which person should have signed for a courier delivery. [Filing No. 23-1 at 20-21.] During that dispute, Ms. Smith testified that Ms. Gilbert "ran behind [Ms. Smith's] chair" into her personal space, and as a result, Ms. Smith called security. [Filing No. 23-1 at 21.] Before security arrived, Ms. Gilbert called Ms. Boyd-Peppler at home, and on speakerphone, they all discussed the proper procedures for accepting deliveries. [Filing No. 23-1 at 21.] After security arrived, Ms. Gilbert again called Ms. Boyd-Peppler and handed the phone to Greg Hilliard, the night supervisor for medical technologists. [Filing No. 23-1 at 21-22.] Mr. Hilliard informed Ms. Smith that Ms. Boyd-Peppler told him to send Ms. Smith home, and Ms. Smith went home. [Filing No. 23-1 at 21.] Ms. Boyd-Peppler later issued a written warning to Ms. Smith, stating that she should "communicate professionally and effectively," which Ms. Smith refused to sign. [Filing No. 23-

---

[1] Ms. Smith believed that Ms. Jones had previously been suspended for making a similar comment. [Filing No. 23-1 at 15.]

2 at 26.] Ms. Gilbert was also issued a written warning. [Filing No. 23-3 at 4.] Ms. Boyd-Peppler informed Ms. Smith that the next time there was an issue between Ms. Gilbert and Ms. Smith, "somebody's going to get fired." [Filing No. 23-1 at 23.]

Approximately one month later, on November 17, 2014, Ms. Smith and Ms. Gilbert became involved in another dispute. Ms. Smith sat in the seat that Ms. Gilbert had begun habitually occupying. [Filing No. 23-1 at 27.] Ms. Gilbert told Ms. Smith to move, because she "was going to sit [there]." [Filing No. 23-1 at 27.] Ms. Smith refused to move, telling Ms. Gilbert that she was working. [Filing No. 23-1 at 28.] Ms. Gilbert began to cry and called Ms. Boyd-Peppler to inform her that Ms. Smith was sitting in the wrong seat. [Filing No. 23-1 at 28.] Ms. Boyd-Peppler asked to speak to Ms. Smith, and after Ms. Smith summarized the situation, Ms. Boyd-Peppler asked Ms. Smith to move. [Filing No. 23-1 at 28.] Ms. Smith asked Ms. Boyd-Peppler if she was serious, and when Ms. Boyd-Peppler responded that she was, Ms. Smith said, "[y]ou know, you [entertain] a lot of petty stuff," and hung up. [Filing No. 23-1 at 28.] Ms. Smith then moved to another seat. [Filing No. 23-1 at 28; Filing No. 23-1 at 30.]

Ms. Boyd-Peppler called back, asked why Ms. Smith had hung up on her, and "started hollering on the phone." [Filing No. 23-1 at 28.] Ms. Smith then laid the phone down and went back to her work station to continue processing samples. [Filing No. 23-1 at 28.] Ms. Boyd-Peppler called back again, and when Ms. Smith attempted to answer the phone, she accidentally disconnected the call. [Filing No. 23-1 at 28.] Ms. Smith then immediately called Ms. Boyd-Peppler back and apologized for accidentally hanging up on her. [Filing No. 23-1 at 28.] Ms. Boyd-Peppler again sent Ms. Smith home. [Filing No. 23-1 at 28.]

The following day, Ms. Smith met with Ms. Boyd-Peppler to discuss the incident. [Filing No. 23-1 at 31.] Ms. Boyd-Peppler stated that she heard that Ms. Smith wanted to be fired. [Filing

5

No. 23-1 at 31.] Ms. Smith responded, "No, [Honeybunch], if I wanted to get fired, all I would have to do is not come into work. I know the policy on getting fired." [Filing No. 23-1 at 31.] Within two days, Ms. Boyd-Peppler notified Ms. Smith that her employment was terminated. [Filing No. 23-1 at 29.] Ms. Smith filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in January 2015, alleging discrimination based on race and retaliation. [Filing No. 23-2 at 30.] She filed the operative Amended Complaint in this Court on February 4, 2016, [Filing No. 6], and IU Health filed an answer on April 8, 2016, [Filing No. 13]. IU Health has moved for summary judgment, [Filing No. 23], and that Motion is now ripe for the Court's review.

## III.
### DISCUSSION

It is not clear from Ms. Smith's Amended Complaint precisely what claims she is raising, but because Ms. Smith proceeds *pro se*, the Court construes the Amended Complaint liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). In light of Ms. Smith's EEOC complaint, the Court construes her Amended Complaint as raising claims of discrimination on the basis of race and for retaliatory discharge in violation of Title VII.

IU Health argues that Ms. Smith has failed to set forth facts that could support a claim of racial discrimination or retaliatory discharge. It also argues that Ms. Smith has made admissions that are fatal to her claims. [Filing No. 24 at 10.] Ms. Smith appears to argue that she was retaliated against for following IU Health's policies regarding reporting threatening behavior. [Filing No. 31 at 3.]

Title VII "makes it unlawful for an employer to 'discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race....'" *Smith v. Ne. Illinois Univ.,* 388

6

F.3d 559, 566 (7th Cir. 2004) (quoting 42 U.S.C. § 2000e–2(a)(1)). Title VII also prohibits an employer from discriminating "against any of his employees…because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff can prove Title VII claims under either the so-called "direct" or "indirect" methods of proof. *See, e.g., Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009); *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1068 (7th Cir. 2012).

The Seventh Circuit recently instructed that, under the direct method, courts should consider

> whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'

*Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).[2] Regarding Ms. Smith's discrimination claim, to the extent that she is raising one, in many cases, the Court would turn here

---

[2] *Ortiz* disapproved of prior efforts on the part of district courts to "shoehorn all evidence into two 'methods,' and [their] insistence that either method be implemented by looking for a 'convincing mosaic,'" because that approach "detracted attention from the sole question that matters: Whether a reasonable juror could conclude that [plaintiff] would have kept his job if he [was not a member of a protected class] and everything else had remained the same…." This Court reads *Ortiz* as a shift from treating "direct" and "indirect" evidence differently, and not as creating a standard different from the two-option test whereby a plaintiff can either prove discrimination by the "direct method," or the "indirect burden-shifting method" set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Ortiz,* 834 F.3d at 766 ("Today's decision does not concern *McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand. We are instead concerned about the proposition that evidence must be sorted into different piles, labeled 'direct' and 'indirect,' that are evaluated differently. Instead, all evidence belongs in a single pile and must be evaluated as a whole"); *David,* 2017 WL 129114 at *4 ("*Ortiz*, however, did not alter '[t]he burden-shifting framework created by *McDonnell Douglas*….' As we have explained, both before and after *Ortiz*, *McDonnell Douglas* is a means of organizing, presenting,

7

to a discussion of the methods of proof, aggregating all of the pieces of evidence or working its way through the steps of the *McDonnell-Douglas* framework. However, the Court takes seriously the Seventh Circuit's reminder in *Ortiz* that the applicable legal standard is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. Regardless of the method of proof employed, Ms. Smith must show that her race is the but-for cause of her adverse employment action—in this case, termination.

This is the somewhat unusual case in which a plaintiff has pointed to no evidence whatsoever that race played *any role* in her adverse employment action. Ms. Smith makes no allegations relating to race in her Amended Complaint, she makes no mention of race in her response in opposition to summary judgment, and she points to no evidence suggesting that race played a role in her termination. The only indication Ms. Smith has given as to a possible race-based motivation for her termination is the fact that she checked the "race" box on her EEOC complaint form as an alleged basis of discrimination. [Filing No. 23-2 at 30.]

Moreover, IU Health points to Ms. Smith's deposition testimony as directly disclaiming any race-based discrimination claim, and Ms. Smith has pointed to no contrary evidence to rebut this assertion. Ms. Smith's testimony is as follows:

> Q: Why did you believe you had been discriminated against because of your race?
>
> A: Maybe at that point I was—you know, it was still a frustration deal, and I'm not sure if I even read correctly when I marked race and all that. I'm not sure I read it correctly.

---

and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases").

>Q: And what makes you think that you were retaliated against because of your race?
>
>A: It was more of retaliation for the incident from—stemming from the Jim McGown, not a race thing. Like I said, I may have read it incorrectly, but it was more of from the incident when our relationship changed.
>
>Q: So sitting here today, is it fair to say you don't have any evidence or belief that there were any behaviors done towards you that were because of your race?
>
>A: Not because of my race.

[[Filing No. 23-1 at 34](#).] Under these circumstances, regardless of the method of proof Ms. Smith sought to employ, no reasonable factfinder could conclude that Ms. Smith's race caused her termination.

For these same reasons, no reasonable factfinder could conclude that Ms. Smith suffered actionable retaliation. To establish a prima facie case of retaliation, a plaintiff must show that: "(1) [s]he engaged in [statutorily] protected activity, (2) [s]he suffered an adverse employment action, and (3) there was a causal connection between the two." *[Poullard](#)*, 829 F.3d at 856. Ms. Smith alleges that her retaliation claim stems from her conversation with Mr. McGown, during which she reported Ms. Boyd-Peppler's "slap" comment. [[Filing No. 23-1 at 34](#).] "Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class." *[Tomanovich v. City of Indianapolis](#)*, 457 F.3d 656, 663 (7th Cir. 2006).

Ms. Smith does not allege—and in fact she seems to disclaim—that her statements to Mr. McGown had anything to do with Ms. Smith's race. "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *[Tomanovich](#)*, 457 F.3d at 663 (citing *[Gleason v. Mesirow Fin. Inc.](#),* 118 F.3d 1134, 1147 (7th Cir. 1997) (holding that the plaintiff's

9

general complaint about management style without raising the subject of sexual harassment fails to constitute protected activity); *Sitar v. Indiana Dept. of Transp.,* 344 F.3d 720, 727 (7th Cir. 2003) (affirming the district court's grant of summary judgment to the employer on the plaintiff's retaliation claim because the plaintiff's complaint to his employer "did not invoke any action protected by Title VII"); *Miller v. Am. Fam. Mut. Ins.,* 203 F.3d 997, 1008 (7th Cir. 2000) (holding that the plaintiff did not engage in a protected activity where "[h]er complaints instead concerned a *general* displeasure with being paid less than her co-workers given her longer tenure and the fact that she had trained some of them ..." and not discrimination related to a protected class)).

Ms. Smith may be correct that Ms. Boyd-Peppler maintained a grudge against her for having discussed Ms. Boyd-Peppler's "slap" comment, and perhaps even targeted her for termination because of it. But Title VII only prohibits retaliation with a nexus to a protected activity—not every instance of unfair treatment. *See Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016) ("Title VII does not set forth a general civility code for the American workplace.")

Because Ms. Smith has not alleged or provided any evidence that her termination occurred because of her race, she cannot maintain a claim under Title VII. IU Health is entitled to summary judgment.

## IV.
### CONCLUSION

For the reasons described above, the Court **GRANTS** IU Health's Motion for Summary Judgment on all of Ms. Smith's claims. [Filing No. 23.] Final judgment shall issue accordingly.

Date: June 6, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DASHON SMITH
5425 Lalista Ct.
Indianapolis, IN 46254

Bonnie L. Martin
OGLETREE, DEAKINS, NASH, SMOAK & STEWART PC (Indianapolis)
bonnie.martin@odnss.com